**IN THE UNITED STATES DISTRICT COURT**
**FOR THE ESASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DAVID ALHAMZAWI, *et ux.*,<br><br>**Plaintiff**,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>**Defendant**. | **Civil No.** 24-327 (FAB) |

**OPINION AND ORDER**

BESOSA, Senior District Judge.[1]

In this case, plaintiff David Alhamzawi, appearing *pro se*, alleges that defendant State Farm Fire and Casualty Company ("State Farm" or "defendant") wrongfully denied insurance coverage after plaintiffs' property was burglarized. Before the Court is the Report and Recommendation ("R&R") by Magistrate Judge D. Edward Snow recommending that defendant's motion for summary judgment (Docket No. 70) be granted, and plaintiffs' objections to the R&R. (Docket No. 84; Docket No. 86.) Also before the Court are defendant's two motions for sanctions against plaintiffs for failure to comply with the Court's Scheduling Order. (Docket No. 65; Docket No. 66.) For the following reasons, the Court **ADOPTS** the R&R in full, **GRANTS** defendant's motion for summary

[1] Of the District of Puerto Rico, sitting by designation.

judgment (Docket No. 70), and **GRANTS** defendant's motions for sanctions found at Docket No. 65 and Docket No. 66.

## I. Background[2]

Plaintiff David Alhamzawi ("David") and his spouse, plaintiff Alaa Jazayerli ("Alaa"), own a residential property located in Kingston, Oklahoma. (Docket No. 70 at p. 4.) Plaintiffs maintained a homeowner's insurance policy issued by State Farm (the "policy") for the property. Id. at p. 1. During the relevant time-period, the property was undergoing gut renovations and all fixtures, appliances, furniture, and personal belongings had been removed from it. Id. at p. 4. Beginning in July and beginning in August 2022, plaintiffs travelled outside the country, at which point construction on the property was put on hold and plaintiffs' contractors did not have permission to enter the property. Id. at p. 5. Upon their return to the United States on October 6, 2022, plaintiff David discovered that the property's garage door showed signs of being broken, and that construction supplies, which were being stored in the garage, had been stolen. Id. at p. 6. Mr. Alhamzawi then filed a claim with State Farm in accordance with the policy. Id.

[2] The following facts are taken from defendant's Undisputed Material Facts contained in its motion for summary judgment. See Docket No. 70.

After conducting an investigation, State Farm denied the claim. Id. at 9. State Farm concluded that the plaintiffs' property constituted a "vacant dwelling" as defined in the policy, and that theft to vacant dwellings are excluded from coverage. Id. The policy defines a "vacant dwelling" as

a. a dwelling:

1. that has not been occupied as a residence for more than 30 consecutive days immediately before the loss; and

2. where a predominant amount of personal property has been removed or is absent such that the dwelling is not functional as a habitual place of residence.

A dwelling will be considered occupied only if it is being used as a habitual place of residence with your knowledge and approval.

b. A dwelling that is under active construction will not be considered a vacant dwelling. A dwelling is under active construction when it is:

1. being built as a new structure;

2. being repaired due to damage otherwise covered by this policy; or

3. undergoing substantial improvements, renovations, remodeling, or modifications; and the construction results in substantial continuing activities by persons associated with the

construction project at the premises during the relevant time periods.

(Docket No. 70, Ex. 1 at p. 7.)

## II. Procedural History

After being denied coverage, plaintiffs brought an action in Oklahoma state court alleging breach of contract and bad faith by State Farm, which then removed the case to this court. (Docket No. 2, Ex. 1; Docket No. 2.) On April 10, 2025, the magistrate judge issued a Scheduling Order in which he set deadlines for the completion of various pre-trial matters. (Docket No. 22.) After the magistrate judge granted defendant's motion to compel initial disclosures, plaintiffs failed to provide the required disclosures by an extended deadline. (Docket No. 32.) The magistrate judge then ordered plaintiffs to show cause for their failure to provide initial disclosures and scheduled a hearing, which plaintiffs failed to attend. (Docket No. 32; Docket No. 34.) On defendant's motion, the magistrate judge sanctioned plaintiffs with $2,316.50 in attorney's fees. (Docket No. 48.)

Plaintiffs also failed to comply with two additional deadlines contained in the Scheduling Order. The Scheduling Order set August 15, 2025 as the deadline to provide Preliminary Exhibit and Witness Lists, and September 15, 2025 as the deadline to provide Final Exhibit and Witness Lists. (Docket No. 22.) After

contacting plaintiff David regarding the failure to provide exhibit and witness lists and receiving no response, defendant made a second motion for sanctions on September 16, 2025 in which it requested that plaintiffs' case be dismissed with prejudice. (Docket No. 65.) Plaintiffs have not responded to this motion.

The Scheduling Order also ordered plaintiffs to tender a written settlement offer to the defendant and the magistrate judge 28 days prior to a settlement conference which was scheduled for October 30, 2025. (Docket No. 22.) After failing to receive a settlement offer by the required deadline, defendant filed a third motion for sanctions in which it reiterated its request that plaintiffs' case be dismissed with prejudice. (Docket No. 66.) Plaintiffs opposed the motion, stating that plaintiff David had been receiving medical treatment and that he had been travelling outside the country attending to a medical emergency involving his spouse, plaintiff Alaa.[3] (Docket No. 67.) Plaintiff David attached to the motion a doctor's note that contained no details on his treatment; only that he had visited the doctor's office on

[3] Earlier during the discovery phase, plaintiff David had cited his travel during the month of September 2025 as the basis for resisting defendant's request to take his deposition in person prior to October 15, 2026, the completion of the discovery deadline. See Docket No. 53 at p. 2. The magistrate judge ordered plaintiff David to provide evidence of a firm date on which he would be back in the United States, to which plaintiff David responded that he would return at the "end of September." (Docket No. 61.)

October 2, 2025 and had been cleared to return to work the next day. (Docket No. 67-1.)

On October 30, 2025, defendant moved for summary judgment. (Docket No. 70.) Plaintiffs filed a late response to defendant's motion, which defendant moved to strike. (Docket No. 72.) In response to the magistrate judge's order to show cause, plaintiff David provided greater details about his medical condition, claiming that he had been suffering a reaction to his diabetes medication which prevented him from timely responding to defendant's motion. (Docket No. 77.) The magistrate judge found that plaintiff had shown good cause for his late filing and denied defendant's motion to strike. (Docket No. 78.) Finally, at plaintiffs' request, the magistrate judge held a hearing on defendant's motion for summary judgement on March 16, 2026, which plaintiffs failed to attend. (Docket No. 83.) The magistrate judge then issued his R&R recommending that defendant's motion for summary judgment (Docket No. 70) be granted. (Docket No. 84.)

**III. Report and Recommendation**

A district court may refer a pending motion to a magistrate judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). Any party adversely affected by the R&R may file objections to it, and the district court is obligated to review *de novo* those portions of the R&R to

which the party has lodged an objection. Lowery Wilkinson Lowery, LLC v. State, No. 25-CV-22-RAW, 2025 WL 3776701 at *1 (E.D. Okla. Dec. 31, 2025) (citing United States v. Raddatz, 447 U.S. 667, 673 (1980)). In conducting its review, the district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

**A. The Summary Judgement Standard**

A party seeking summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(c) "always bears the initial responsibility of . . . identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the movant carries this initial burden, . . . the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' . . . from which a rational trier of fact could find for the nonmovant." Lupia v. Medicredit, Inc., 8 F.4th 1184, 1195 (10th Cir. 2021) (quoting Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670–71 (10th Cir. 1998).) In other words, "a motion for summary judgment requires the responding party to come forward with the evidence that it has—it is the 'put up or shut up' moment

in a lawsuit." Eberts v. Goderstad, 569 F.3d 757, 767 (7th Cir. 2009) (quotation omitted). If the responding party "cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." Celotex, 477 U.S. at 331 (Brennan, J., dissenting).

**B. Plaintiffs' Objections**

Plaintiffs raise five objections to the R&R. See Docket No. 86. Unfortunately, they have not put forward a single piece of evidence to support any of their objections. First, plaintiffs argue that the magistrate judge erred by finding that plaintiffs' property constituted a "vacant dwelling" within the terms of the policy. Plaintiffs contend that the master bedroom was fully furnished, that plaintiffs maintained personal clothing, furniture, and items for daily living inside the home, that the property had functioning utilities, and that a motorhome was also connected to the property's utilities. Id. at p. 2. Defendant, however, has put forward pre-loss photos, provided by plaintiff David himself, showing the home completely devoid of any personal property, fixtures, or furniture, and in many rooms stripped down to only the frames. See Docket No. 70, Ex. 12. Plaintiffs, on the other hand, have not put forward any evidence to contradict these photos. Nor have plaintiffs put forward any evidence showing that the property had active utilities or a motorhome on its

premises, let alone explaining why these facts would place the property outside the policy's definition of a "vacant dwelling."

Plaintiffs next argue that the magistrate judge erred in equating his "temporary absence," which he claims was due to a medical emergency, with the property's "vacancy." See Docket No. 71 at p. 2. Under Oklahoma law, however, "[t]he parties are bound by the terms of their agreement and the Court will not undertake to rewrite the same nor to make for either party a better contract than the one which was executed." Bituminous Cas. Corp. v. Cowen Const., Inc., 2002 OK 34, ¶ 9 (2002). Here, the policy defines "vacant dwelling" as a property that "has not been occupied as a residence for more than 30 consecutive days immediately before the loss." (Docket No. 70, Ex. 1 at p. 7.) Defendant put forward plaintiff David's own sworn admissions that neither he nor his wife Alaa were residing on the property during the thirty days prior to discovering the theft. Instead, they indicated that they were either in Egypt or Turkey between late July 2022 and early October 2022. See Docket No. 70, Ex. 4 at 11; Docket No. 70, Ex. 3 at p.5; see also Docket No. 70, Exs. 5-6 (plaintiffs' airline itineraries). The undisputed evidence shows that the property was unoccupied for at least thirty days prior to the loss, and therefore it constitutes a "vacant dwelling" within the terms of the policy.

Plaintiffs next claim that the policy language is ambiguous, and that the ambiguous language should have been construed in favor of the insured. See Docket No. 86 at p. 2. The Court finds, however, that the policy language is not ambiguous and that the undisputed evidence shows that defendant did not breach the policy by concluding that plaintiffs' property was a "vacant dwelling" within the meaning of the policy. The only language in the policy's "vacant dwelling" definition which could border on ambiguity is the exception to the definition of "vacant dwelling" for properties that are under construction, where such construction "results in substantial continuing activities by persons associated with the construction project at the premises during the relevant time periods." (Docket No. 70, Ex. 1 at p. 7.) But, no activity that approaches any reasonable definition of the phrase "substantial continuing activities" was taking place on the property during the relevant time-period; the undisputed evidence shows that construction work had been halted while plaintiffs were travelling, and that the contractors did not have permission to enter the premises. See Docket No. 70, Ex. 3 at p.6; Docket No. 70, Ex. 4 at p. 12.

Plaintiffs next argue that the magistrate judge erred in suggesting that plaintiffs resided in Dubai or Istanbul, and that in fact their only primary residence is in Kingston, Oklahoma.

See Docket No. 86 at p. 3. Plaintiffs offered no evidence to support this assertion, however. By contrast, defendant put forward plaintiff David's sworn statement that "[m]ostly I live in Dubai and Istanbul. That's my residence. So if I come to the USA, maybe I'll stay a night or two." (Docket No. 70, Ex. 4 at p. 5.)

Finally, plaintiffs argue that defendant accepted his premiums without disclosing that temporary absence could void coverage, and that this constitutes bad faith. See Docket No. 86 at p. 3. But the language plaintiff alleges defendant failed to disclose appears plainly in the policy and, parties to a contract are presumed to have read and understood the contract's plain terms. Mofrad v. New York Life Ins. Co., 206 F.2d 491, 493 (10th Cir. 1953).

Thus, in light of the fact that plaintiffs have not put forward a single piece of evidence to support their claim or any of their objections to the R&R, the Court finds that plaintiffs' objections are without merit and **ADOPTS** the R&R in full. State Farm's motion for summary judgment (Docket No. 70) is **GRANTED.**

**IV. Motions for Sanctions**

Turning to defendant's 2nd and 3rd Motions for Sanctions, Fed. R. Civ. P. Rule 16(f) permits a Court to impose sanctions on

a party for failure to obey a scheduling order. Rule 16 permits the Court to impose "any just order[]" including those authorized by Fed. R. Civ. P. Rule 37(b). Rule 16 also provides that "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Thus, if sanctions are to be imposed, Rule 16 makes the award of attorney's fees mandatory unless either (1) the party's noncompliance was substantially justified, or (2) other circumstances render an award of fees unjust. Furthermore, "[t]he filing of a claim without counsel . . . does not shield a plaintiff from sanctions that may come with noncompliance." Blackburn v. Webb, No. CIV-23-379-R, 2024 WL 4607718 at *3 (W.D. Okla. Oct. 29, 2024).

Plaintiffs' repeated failure in this action to adequately prosecute their claim has prevented "the just, speedy, and inexpensive determination of the case and [has] significantly interfere[d] with the judicial process." Mays v. Forsythe, No. CIV-21-877-G, 2023 WL 6307979, at *5 (W.D. Okla. June 23, 2023), report and recommendation adopted *sub nom.* Mays v. Grady Cnty. Jail, No. CIV-21-877-G, 2023 WL 6301658 (W.D. Okla. Sept. 27,

2023) (citation omitted). Sanctions are therefore warranted against plaintiffs. Plaintiffs have been sanctioned already for failure to timely provide initial disclosures after being warned several times that further failures to obey court orders would result in additional sanctions. Plaintiffs continued, however, to fail to abide by discovery and settlement deadlines. Plaintiffs failed to provide both exhibit and witness lists and a written settlement offer by the Scheduling Order deadlines. Plaintiffs have also failed to appear at hearings that plaintiff David himself requested, wasting both judicial resources and the time of opposing counsel.

While it appears that plaintiffs were travelling internationally during much of the time allotted for discovery, this does not excuse their failure to comply with court orders. As an initial matter, plaintiff David was present at the scheduling conference and had been provided with the Court's Scheduling Order by April 10, 2025, providing him ample time to orient their travel around the deadlines of their case. Moreover, while the Court acknowledges that unexpected emergencies sometimes arise, the proper response is not to disregard court-imposed deadlines but to take the appropriate steps to seek extensions or reschedule hearings. Neither does plaintiffs' *pro se* status excuse them from obeying court deadlines or attending scheduled hearings.

Accordingly, the Court finds that plaintiffs' noncompliance was not substantially justified nor does any other circumstance make the award of fees unjust. See Fed. R. Civ. P. Rule 16(f)(2).

In light of the fact that the Court adopts the R&R recommending dismissal of plaintiffs' claim on summary judgment, the Court chooses to sanction plaintiff solely by ordering that he pay defendant's attorney's fees incurred as a result of plaintiffs' noncompliance with the Scheduling Order. See id. (authorizing the award of fees "instead of or in addition to any other sanction"). Because the Court's Scheduling Order also required defendant to submit preliminary and final exhibit and witness lists, no fees shall be awarded for time spent preparing these materials. Instead, plaintiffs are ordered to pay the reasonable attorney's fees for counsel's time spent on defendant's 2nd and 3rd Motions for Sanctions, as well as for time spent attending the hearing on defendant's motion for summary judgment held on March 16, 2026, which plaintiffs failed to attend.

## V. Conclusion

For the foregoing reasons, the R&R (Docket No. 84) is **ADOPTED** in full; defendant's motion for summary judgment (Docket No. 70) is **GRANTED** and this case is **DISMISSED, with prejudice**. Defendant's 2nd and 3rd Motions for Sanctions (Docket Nos. 65 and 66) are also **GRANTED**. Defendant is ordered to submit evidence of the attorney's

fees incurred in bringing its 2nd and 3rd Motions for Sanctions, as well as counsel's time spent attending the March 16, 2026 hearing, **no later than September 25, 2026.** Plaintiffs shall file any objection to the amount or reasonableness of the fees claimed **no later than October 9, 2026.**

Judgment shall be entered dismissing this case with prejudice.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 17, 2026.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE