**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DAVID ALHAMZAWI, *et. al.*,<br><br>**Plaintiffs**,<br><br>v.<br><br>STATE FARM FIRE AND CASULATY COMPANY,<br><br>**Defendant**. | **Civil No.** 24-327(FAB) |

**OPINION AND ORDER**

BESOSA, Senior District Judge.[1]

Before the Court is plaintiffs' motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 59(e) or, in the alternative, relief from judgment pursuant to Fed. R. Civ. P. 60(b). (Docket No. 105.) Plaintiffs' motion also seeks reconsideration of the Court's prior order, (Docket No. 100,) imposing sanctions on plaintiffs in the form of attorney's fees for their multiple failures to follow the Court's Scheduling Order and to appear at scheduled hearings. Id. Also before the Court is defendant's motion for attorney's fees, which it submitted in compliance with the Court's sanctions order directing defendant to submit evidence of its attorney's fees.

[1] Of the District of Puerto Rico, sitting by designation.

(Docket No. 102.) For the following reasons, plaintiffs' motion, insofar as it seeks relief pursuant to Rule 59(e) or, in the alternative, Rule 60(b), from the judgment dismissing their claims with prejudice, is **DENIED.** Plaintiffs' motion, insofar as it seeks reconsideration of the Court's prior sanctions order, is **GRANTED IN PART AND DENIED IN PART.** Defendant's motion for attorney's fees is **GRANTED IN PART AND DENIED IN PART.**

## I. Background

### A. Factual Background and Procedural History

Plaintiff David Alhamzawi and his spouse, plaintiff Alaa Jazayerli, appearing *pro se*, are the owners of a residential property in Kingston, Oklahoma. (Docket No. 70 at p. 4.) In October 2022, while plaintiffs were travelling outside of the country, plaintiffs' property was broken into and burglarized. Id. at p. 6. Plaintiffs thereafter filed a claim pursuant to their homeowner's insurance policy with defendant, State Farm Fire and Casualty, Co. Id. At the time of the theft, plaintiffs' property was undergoing gut renovations and all fixtures, appliances, furniture, and personal belongings had been removed from the home. Id. at p. 4. Defendant denied plaintiffs' claim on the basis that it fell within the insurance policy's "vacant dwelling" exception to coverage because a substantial amount of personal property had been removed from the home, and because plaintiffs had been travelling outside the country and not residing at the property in

the thirty days before the theft. Id. at p. 9. After their claim was denied, plaintiffs sued defendant for wrongful denial of insurance coverage, and defendant removed the case to federal court. (Docket No. 2.)

On September 17, 2026, the Court adopted the Report and Recommendation ("R&R") of Magistrate Judge D. Edward Snow and granted defendant's motion for summary judgment. (Docket No. 100.) The Court found that defendant had put forward evidence sufficient to show that plaintiffs' property fell within the "vacant dwelling" exception of the insurance policy. Plaintiffs, by contrast, failed to present a single piece of evidence to support their argument that the property was not a "vacant dwelling" at the time of the theft. Accordingly, the Court held that plaintiffs had not met their burden of showing the existence of a genuine dispute about any material fact, and dismissed their claims with prejudice.

**B. Plaintiffs' Sanctions**

Throughout the course of the litigation, plaintiffs were the subjects of multiple motions for sanctions. Defendant brought its first motion for sanctions after plaintiffs failed to provide initial disclosures by the Court's Scheduling Order deadline of April 14, 2025, and then again missed the extended deadline set after the Court granted defendant's motion to compel. (Docket No. 36) ("1st Motion for Sanctions"). The magistrate judge granted defendant's motion for sanctions and ordered plaintiffs to pay

defendant's attorney's fees in the amount of $2,316.50. (Docket No. 48.) The magistrate judge also warned plaintiffs that additional violations of the Court's orders would result in additional and more severe sanctions. Id.

Defendant brought a second motion for sanctions after plaintiffs failed to provide witness and exhibit lists by the Scheduling Order deadlines.[2] (Docket No. 65) ("2nd Motion for Sanctions"). Plaintiffs did not respond to this motion. Finally, defendant brought a third motion for sanctions after plaintiffs failed to make a settlement offer by the Scheduling Order deadline of October 2, 2025. (Docket No. 66) ("3rd Motion for Sanctions"). In his response to defendant's 3rd Motion for Sanctions, plaintiff Alhamzawi stated that he has diabetes and that during the relevant time-period he was suffering from a severe medication-related skin rash that required treatment. (Docket No. 77.) He attached to his motion a doctor's note that showed he had been seen on October 2, 2026 and that he could return to work the next day, but otherwise contained no relevant information. (Docket No. 67-1.) Plaintiff Alhamzawi also claimed that he had been travelling outside of the country from at least August 2025 until October 2025, which prevented him from attending to his lawsuit. (Docket No. 67.)

[2] The Scheduling Order deadline for preliminary witness and exhibit lists was August 14, 2025 and the deadline for final witness and exhibit lists was September 15, 2025.

While defendant's motions for sanctions were still pending, on October 30, 2025, defendant moved for summary judgment. (Docket No. 70.) Plaintiffs filed an untimely response on November 20, 2025. (Docket No. 71). Upon being ordered to show cause for his failure to timely respond, plaintiff Alhamzawi again relied upon his skin rash as an excuse for his late filing. (Docket No. 77.) The Court found that good cause existed for plaintiff Alhamzawi's failure to timely respond and permitted him to file his response. (Docket No. 78).

On March 16, 2026, the magistrate issued his R&R recommending defendant's summary judgment motion be granted. (Docket No. 84). The magistrate judge also noted plaintiffs' repeated failures to comply with Court orders and attend hearings, including plaintiffs' failure to attend a hearing on defendant's motion for summary judgment on March 16, 2026, a hearing which plaintiffs themselves had requested. In a motion to reconsider the R&R, plaintiff Alhamzawi claimed that he had not been given an opportunity to respond to defendant's motion for summary judgment because he had failed to receive the motion due to unreliable internet and mail service in the rural area in which he lived. (Docket No. 85). He also claimed that he failed to appear at the March 16, 2026 hearing due to a "severe storm" in Oklahoma that prevented travel. Id. The magistrate judge found both assertions to be objectively false: plaintiff had filed a response to

defendant's summary judgment motion, and weather records showed that while there were significant storms in Oklahoma in the month of March, they primarily occurred prior to the March 16, 2026 hearing. (Docket No. 87.)

In the Court's September 17, 2026 Opinion and Order adopting the R&R and dismissing plaintiffs' claims, the Court also granted defendant's then-outstanding 2nd and 3rd Motions for Sanctions. (Docket No. 100.) In so doing, it rejected plaintiff Alhamzawi's excuses for his failure to comply with the Court's Scheduling Order and to attend the March 16, 2026 hearing. The Court acknowledged that "while unexpected emergencies sometimes arise, the proper response is not to disregard court-imposed deadlines but to take the appropriate steps to seek extensions or reschedule hearings." (Docket No. 100 at p. 13.) In addition to granting defendant's motions for sanctions based upon plaintiffs' failure to comply with the Scheduling Order, the Court also imposed sanctions for plaintiffs' failure to appear at the March 16, 2026 hearing. Id. The Court ordered plaintiffs to pay defendant's reasonable attorney's fees for time spent preparing its 2nd and 3rd Motions for Sanctions and for time spent attending the March 16, 2026 hearing. Id. It also ordered defendant to submit evidence of its attorney's fees and permitted plaintiffs to object to the amount or reasonableness of those fees. Id. On September 24, 2026, defendant submitted a motion for attorney's fee and attached

detailed billing records for time spent preparing its 2nd and 3rd Motions for Sanctions and for time spent attending the March 16, 2026 hearing. (Docket No. 102.) Plaintiffs have filed objections to the reasonableness of these fees. (Docket No. 104.)

### C. Plaintiffs' Rule 59(e)/Rule 60(b) Motion

Plaintiffs have now moved to alter or amend the judgment and sanctions order pursuant to Rule 59(e), or in the alternative, to be relieved from the judgment and sanctions order pursuant to Rule 60(b). In the motion, plaintiff Alhamzawi raises three arguments. First, plaintiff Alhamzawi seeks to introduce additional evidence that he argues shows that his property was not a "vacant dwelling" at the time of the theft. Plaintiff Alhamzawi describes the evidence as including photographs of the property showing that personal property was present in the property, utility records, construction and contractor records, and the testimony of State Farm agent Kyle Kennedy who visited plaintiff's property as part of the claim assessment process. Plaintiff Alhamzawi states that this evidence is contained in an "Exhibit C," though no Exhibit C was attached to the motion, nor has it been submitted since.

Second, Alhamzawi seeks to introduce additional evidence of his medical conditions which he asserts prevented him from adequately prosecuting his case. He primarily points to a knee injury he sustained in January 2026, and the treatment, surgery, and physical therapy he has undergone since then. In support of

these assertions he has provided a medication list showing various medicines he has been prescribed over the past two years, as well as the undated report of a physical exam. (Docket No. 105, Ex. A.) He states that he intends to provide additional medical records from his knee surgery and physical therapy. (Docket No. 105.)

Third, plaintiff Alhamzawi asks the Court to consider the effect of his Chapter 7 bankruptcy discharge on his liability for sanctions.

## II. Post-Judgment Relief

### A. Legal Standard

The Court first addresses whether plaintiffs have established entitlement to relief from the judgment dismissing their claims with prejudice, before turning to their arguments for relief from the sanctions order. The Tenth Circuit Court of Appeals has summarized Fed. R. Civ. P. 59(e) as follows:

> "The purpose of a Rule 59(e) motion is to correct manifest errors of law or to present newly discovered evidence." "Grounds for granting a Rule 59(e) motion include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."
>
> To support a Rule 59(e) motion with additional evidence, such as [ ] deposition testimony [ ], the moving party must show "(1) that the evidence is newly discovered, or (2) if the evidence was available at the time summary judgment was granted, that counsel made a diligent yet unsuccessful attempt to discover the evidence."

Monge v. RG Petro-Mach. (Grp.) Co., 701 F.3d 598, 611 (10th Cir. 2012) (citations omitted).

A Rule 60(b) motion provides similar, yet nonetheless distinct, grounds for relief. Jennings v. Rivers, 394 F.3d 850, 854 (10th Cir. 2005) ("These two rules serve different purposes and produce different consequences, both substantive and procedural."). For example, Rule 60(b) relief may also be granted based upon newly discovered evidence, but only where that evidence could not have been discovered in time to make a Rule 59 motion. Fed. R. Civ. P. 60(b)(2).

Rule 60(b) also provides for relief based upon "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "The determination of whether neglect is excusable is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Jennings, 394 F.3d at 856 (quotations omitted). "A court may take into account whether the mistake was a single unintentional incident (as opposed to a pattern of deliberate dilatoriness and delay), and whether the attorney attempted to correct his action promptly after discovering the mistake." Id. at 857.

Finally, relief pursuant to Rule 60(b) is "extraordinary and may only be granted in exceptional circumstances." Servants of Paraclete v. Does, 204 F.3d 1005, 1009 (10th Cir. 2000). And neither a Rule 59(e) motion nor a Rule 60(b) motion are appropriate

"vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." Id. at 1012.

**B. Discussion**

**i. Additional evidence**

In support of his motion for post-judgment relief, plaintiff Alhamzawi states he has additional evidence which shows that, at the time of the theft, his property was not a "vacant dwelling" within the meaning of the insurance policy. While plaintiff Alhamzawi has not provided this evidence to the Court, he describes the evidence as photographs showing the condition of the property and the presence in the property of personal belongings, utility records showing active utility service to the property, evidence of a motorhome on the property that was connected to the utilities, and contractor and construction records. (Docket No. 105 at p. 4.) In a declaration attached to his motion he also identifies State Farm agent Kyle Kennedy, who viewed plaintiffs' home as part of the claims assessment process, as a witness. (Docket No. 105-3.)

None of this evidence constitutes "newly discovered evidence" within the meaning of Rule 59(e) or Rule 60(b). Plaintiff Alhamzawi himself describes much of the evidence, including the photographs and utility records, as having been provided to

defendant by him during discovery. (Docket No. 105.) By his own admission, this evidence was in his possession prior to judgment and therefore could not have been "newly discovered." State Farm agent Kyle Kennedy had also been identified to plaintiffs as a potential witness in defendant's initial disclosures. (Docket No. 24 at p. 5.)

Even if the evidence, as described by plaintiff Alhamzawi, had been proffered prior to the entry of judgment, it is unclear whether it would have been sufficient to avoid summary judgment. While plaintiff Alhamzawi claims to have photos showing personal property present in the home, defendant put forward numerous photographs, provided by plaintiffs themselves, that show exactly the opposite. See Docket No. 70, Ex. 12 (showing the home empty and, in many rooms, stripped to only its frame). Plaintiffs also do not claim to have any evidence that would tend to refute the evidence defendant put forward of plaintiffs' absence from the property in the thirty days prior to the loss, which included plaintiffs' flight itineraries and sworn testimony that they primarily resided outside of the United States. See Docket No. 70, Exs. 5-6, Ex. 4 at p. 5. While it is possible that evidence showing that substantial construction work was taking place while plaintiffs were away might have sufficed to place plaintiffs' home within the insurance policy's "active construction" exception to the definition of a "vacant dwelling," as the person overseeing

the renovations, this evidence was available to plaintiff Alhamzawi prior to summary judgment and could have been easily located and presented to the Court.[3]

Simply put, none of the evidence plaintiffs describe is "newly discovered" for purposes of Rule 59(e), and therefor also does not justify relief pursuant Rule 60(b)(2). Instead, plaintiffs' motion is merely an attempt to put before the Court evidence which they should have presented in response to defendant's motion for summary judgment. Their failure to do so is not grounds to re-open the judgment.

**ii. Medical evidence**

Plaintiff Alhamzawi also argues that his medical condition, namely a knee injury suffered in January 2026 and subsequent treatment, warrant relief from the judgment. Analysis of this argument under Rule 59(e)'s "manifest injustice" standard and Rule 60(b)(1)'s "excusable neglect" standard is substantially similar and leads to the same result — that plaintiff Alhamzawi has not established grounds for relief.

Plaintiff Alhamzawi's argument that his knee injury excused his neglect in prosecuting his case fails primarily because the

---

[3] To the extent that evidence of construction work during plaintiffs' absence does exist, it would directly conflict with plaintiff Alhamzawi's sworn testimony that he did not authorize any of his contractors to continue work on the property while he was away. See Docket No. 70, Ex. 3 at p.6; Docket No. 70, Ex. 4 at p. 12.

alleged injury happened in January 2026, several months after defendant's motion for summary judgment was fully submitted. It therefore could not have impacted his ability to respond substantively to defendant's motion.

Though the medication list provided by plaintiff Alhamzawi does tend to corroborate his earlier claims of a severe skin rash which prevented him from timely responding to defendant's summary judgment motion,[4] plaintiff was already granted leniency on his late response filing, and he has identified no new circumstances which would tend to excuse his failure to put forth even a single piece of evidence, evidence which was clearly in his possession, to support his claim at the summary judgment stage. Thus, the additional medical records provided by plaintiff Alhamzawi do not justify relief pursuant to Rule 59(e) or Rule 60(b).

## III. Sanctions

### A. Effect of Plaintiff's Bankruptcy Discharge

Plaintiffs have also moved the Court to reconsider its prior order imposing sanctions on plaintiffs for their failures to adhere to the Court's Scheduling Order deadlines and for their failure to appear at the March 16, 2026 hearing on defendant's motion for

[4] The medication list shows that plaintiff Alhamzawi was prescribed LamISIL topical cream on October 15, 2025. (Docket No. 105, Ex. A.) LamISIL, the brand name for Terbinafine, is an anti-fungal drug used to treat fungal infections on the skin. *Terbinafine (topical route)*, MAYO CLINIC (Oct. 1, 2026), https://www.mayoclinic.org/drugs-supplements/terbinafine-topical-route/description/drg-20066273.

summary judgment. (Docket No. 105.) In support of their motion for reconsideration, plaintiffs bring to the Court's attention plaintiff Alhamzawi's Chapter 7 bankruptcy case. Plaintiff Alhamzawi filed his petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code on January 15, 2026 and was granted a discharge on June 9, 2026. In re Yasser Alhamzawi, No. 26-40166, Docket Nos. 1, 22 (Bankr. E.D. Tex.). Plaintiffs ask the Court to consider the effect of plaintiff Alhamzawi's bankruptcy discharge on the Court's prior sanctions order awarding attorney's fees to defendant. (Docket No. 105 at pp. 4-5.) The Court finds that some, but not all, of the attorney's fees awarded as sanctions have been discharged by plaintiff Alhamzawi's bankruptcy.

**i. Adjudication of the discharge issue**

A voluntary bankruptcy case is commenced by filing a petition for bankruptcy with the bankruptcy court. 11 U.S.C. § 301. The filing of the petition triggers an "automatic stay," which operates to stay "the commencement or continuation, . . . of [any] action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." Id. at § 362. In a Chapter 7 case, upon filing of the necessary materials and a meeting of a debtor's creditors, the bankruptcy court, if it finds the debtor eligible, issues an order of discharge that discharges

the debtor from all debts that arose before the filing of the bankruptcy petition. 11 U.S.C. § 727(b) (discharging debtor from all debts that arose prior to the "order of relief"); 11 U.S.C. § 301 (filing of bankruptcy petition constitutes an "order of relief" for purposes of Chapter 7 cases). The order of discharge also operates to dissolve the automatic stay and replaces it with an injunction pursuant to 11 U.S.C. § 524 that both "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to [any debt discharged under Section 727]," and enjoins "commencement or continuation of an action, . . . to collect, recover or offset any such debt as a personal liability of the debtor. . ." Id. at § 524; Id. at § 362(c)(2)(C) (stay is lifted upon grant of discharge pursuant to Chapter 7).

While the Section 524 injunction enjoins any action to collect on a debt that was discharged in bankruptcy, sometimes it is unclear whether a given debt was within the scope of the order of discharge. In these circumstances, it is appropriate for the court in which the defense of discharge has been raised to determine whether the debt falls within the scope of the discharge.[5] In re

[5] While non-bankruptcy courts generally share jurisdiction with bankruptcy courts over questions of discharge, certain exceptions to discharge, not relevant here, are within the exclusive jurisdiction of bankruptcy courts. See 11 U.S.C. § 523(a)(2)(fraud), (4)(fraud by a fiduciary), (6)(willful and malicious injury caused by the debtor), and (11)(fraud by a fiduciary against a depository institution or credit union).

Morrow, 613 B.R. 786, 798 (Bankr. N.D. Okla. 2020) ("The issue of whether a debt was excepted from discharge pursuant to § 523(a) 'may be determined either in the court that entered the discharge or—in most instances—in another court with jurisdiction over the creditor's claim.'") (quoting Fed. R. Civ. P. 8, Advisory Committee Notes to 2010 Amendment); Federal Rule of Bankruptcy Procedure Rule 4007, Advisory Committee Notes – 1983).

As an initial matter, defendant argues that the automatic stay does not prevent this Court from fixing the amount of attorney's fees owed by plaintiffs because the stay only reaches proceedings "against the debtor." (Docket No. 107 at p. 17.) Because this action was initiated by plaintiff/debtor Alhamzawi, defendant argues, it is not "against the debtor" and therefore not covered by the automatic stay. Defendant's argument is misplaced, however, because plaintiff Alhamzawi received a discharge in his bankruptcy case on June 9, 2026 which had the effect of dissolving the automatic stay and imposing the Section 524 injunction. 11 U.S.C. § 362(c)(2)(C). The proper analysis then is not whether the motion for attorney's fees violates the automatic stay, but instead whether plaintiff Alhamzawi's liability for sanctions falls within the scope of the order of discharge.

Turning to the question of discharge, defendant argues that this Court may fix the amount of attorney's fees without reaching the question of discharge because merely adjudicating plaintiffs'

liability and fixing the amount of fees does not amount to an "an act, to collect, recover or offset" a discharged debt and therefore does not run afoul of the Section 524 injunction. Id. Defendant's argument raises the question of whether the continuation of proceedings to liquidate a claim against the debtor, short of bringing an action to collect on that claim, violates the Section 524 injunction. The Court's review of the relevant caselaw leads it to conclude that, with one exception not applicable here, actions to liquate a claim against the debtor are barred by the Section 524 injunction the same as an action to collect on a liquidated claim.

The primary exception to the Section 524 injunction against post-discharge suits against the debtor is when the establishment of the debtor's liability is a prerequisite to the creditor's recovery against a third-party, for example an insurance fund. In Walker v. Wilde (In re Walker), the Tenth Circuit Court of Appeals held that the exception for suits in which the debtor is named as a nominal defendant, but recovery is in fact sought against a third-party, "hinges 'upon the condition that the debtor not be personally liable in a way that would interfere with the debtor's fresh start in economic life.'" 927 F.2d 1138, 1142 (10th Cir. 1991) (quoting Owaski v. Jet Florida Sys., Inc. (In re Jet Florida Sys., Inc.), 883 F.2d 970, 975 (11th Cir.1989)). Here, however,

plaintiffs' liability for sanctions is personal, and so this exception does not apply.

In other contexts in which a creditor has sought to establish the debtor's liability prior to a ruling on discharge, bankruptcy courts have permitted these actions only by means of a modification of the Section 524 injunction. For example, in In re Robben, No. 13-20814, 2022 WL 828188 (Bankr. D. Kan. Mar. 17, 2022), a creditor first sought to gain a ruling in state court on the debtor's liability for losses related to a failed real estate investment. Then, it intended to file an adversarial proceeding in the bankruptcy court and argue that the judgment fell under the exceptions to discharge in 11 U.S.C. § 523. The creditor made a motion in the bankruptcy court to modify the injunction to permit it to proceed with its claims in state court, and the bankruptcy court granted the motion, but only for the state law claims that resembled the exceptions to discharge in § 523, and upon the condition that if the bankruptcy court later found the judgment to be discharged, the state court would render the judgment void. Implicit in the bankruptcy court's modification of the injunction is that the modification was necessary in the first place, because in absence of the modification, the state court proceeding would have violated the Section 524 injunction. See also In re Chin Kun An, 526 B.R. 24, 27 (Bankr. C.D. Cal. 2015) (quoting its prior order regarding creditor's state court action awaiting trial, "as

a practical matter, the action should be treated as barred by the discharge injunction unless and until the bankruptcy court holds otherwise").

Faced with similar circumstances, other bankruptcy courts have taken the same approach. In Lee v. Cho (In re Cho), __ B.R. __, 2026 WL 2241282 (Bankr. E.D. Wisconsin, July 29, 2026), the creditor had initiated a domestic abuse lawsuit against the debtor in state court. While awaiting trial, the debtor filed for bankruptcy and received a discharge. The creditor moved the bankruptcy court for a modification of the discharge to permit her to establish the debtor's liability on her claims in the state court, after which she intended to return to the bankruptcy court to argue the judgment fell under an exception to discharge in Section 523. The court analyzed the relevant equitable factors that bear on modification of the injunction and permitted the creditor to pursue her claims against the debtor in state court. Again, implicit in the bankruptcy court's ruling was that absent modification of the injunction, the creditor's pursuit of a judgment in state court would violate the Section 524 injunction.

The reasoning implicit in In re Robben and In re Cho is instructive here. Assuming plaintiffs' liability for attorney's fees is a debt covered by the discharge order, a matter addressed below, without a modification of the injunction, continuation of

these proceedings to fix the amount of attorney's fees owed by plaintiffs would violate the Section 524 injunction.

Considerations of judicial economy also weigh in favor of adjudication of discharge by this Court. In In re Robben and In re Cho, the claimants had sought modification of the Section 524 injunction in the bankruptcy court so that they could establish the debtor's liability in state court, before returning to the bankruptcy court once again to adjudicate discharge. While both courts acknowledged that resolution of both liability and discharge in a single court would be preferable, neither claimant had consented to trial of their claims by the bankruptcy court. In re Robben, 2022 WL 828188 at *3; In re Cho, 2026 WL 2241282 at *6. Furthermore, both claimants alleged that the claims they were pursuing in state court fell under one of the exceptions to discharge that are within the exclusive jurisdiction of bankruptcy courts, necessitating the return to the bankruptcy court to adjudicate discharge, but only if liability was established first. In re Robben, 2022 WL 828188 at *4 (§ 523(a)(2), (6)); In re Cho, 2026 WL 2241282 at *1 ((§ 523(a)(6)). In those cases, then, it was more efficient to adjudicate liability on the state law claims, where the state court proceedings were significantly advanced, and potentially obviate the need to return to the bankruptcy court in the case the debtor was found not to be liable.

In this case, however, plaintiff/debtor Alhamzawi's liability has already been established, and the only issue bearing on liquidation of the amount of attorney fees owed is the question of discharge. And, unlike the courts in In re Robben and In re Cho, defendant here has not alleged that the sanctions order falls within an exception to discharge that is within the exclusive jurisdiction of the bankruptcy court, which means that this Court has concurrent jurisdiction to determine the issue of discharge. Accordingly, it would be inefficient for this Court to fix the amount of attorney fees, only for plaintiff/debtor Alhamzawi to then go to the bankruptcy court to adjudicate discharge, when this Court is fully capable of settling the question in these proceedings. Accordingly, the Court will proceed to decide the question of whether plaintiff Alhamzawi's liability for sanctions has been discharged.

**ii. Some, but not all, of the sanctions have been discharged**

A discharge in a Chapter 7 bankruptcy discharges the debtor from all "debts" that arose before the filing of the bankruptcy petition. 11 U.S.C. § 727(b). The Bankruptcy Code defines "debt" as a "liability on a claim" and in turn defines a "claim" broadly to include any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

secured, or unsecured." Id. at § 101(12) (defining "debt"); id. at § 101(5) (defining "claim"). "Under this broad definition of claim, 'all legal obligations of the debtor, *no matter how remote or contingent*, will be able to be dealt with in the bankruptcy case.'" Energy Coop., Inc. v. SOCAP Int'l, Ltd. (In re Energy Coop., Inc.), 832 F.2d 997, 1001 (7th Cir. 1987) (emphasis in original) (quoting S.Rep. No. 95-989, at 22 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808; H.R.Rep. No. 95-595, at 309 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6266).

Because a bankruptcy discharge only discharges debts that arose prior to the filing of the bankruptcy petition, the key issue for creditors is whether their claim arose pre-petition or post-petition. To determine whether a claim arose pre-petition or post-petition, the majority of courts, including the Court of Appeals for the Tenth Circuit, rely upon the "conduct theory." See Watson v. Parker (In re Parker), 313 F.3d 1267 (10th Cir. 2002). Pursuant to the conduct theory, "the timing of the debtor's conduct that gives rise to the cause of action determines whether the claim is pre or post-petition." Watson v. Parker (In re Parker), 264 B.R. 685, 696 (10th Cir. BAP 2001), aff'd, 313 F.3d 1267 (10th Cir. 2002); see also In re Greenway Park, LLC, No. 15-13067-SAH, 2022 WL 4589211 at *4 (Bankr. W.D. Okla. Sept. 29, 2022) (collecting cases in which courts have relied on a variety of conduct to determine when a claim arose). In Aldrich v. Papi (In re Papi),

427 B.R. 457 (Bankr. N.D. Ill. 2010), the court applied the conduct theory to a claim for sanctions. There, the claimant had made a motion for sanctions in state court against the debtor which was outstanding at the time the debtor filed his petition for Chapter 7 bankruptcy. Id. at 459-60. In the bankruptcy court, the claimant argued that her sanctions claim would not be discharged because the claim would only "arise" if and when the state court entered an order for sanctions against the debtor. Id. at 465. The bankruptcy court rejected this argument and held instead that "from the moment the Debtor purportedly filed motions wrongfully in the state court, the Plaintiff had a claim for sanctions, contingent on the [state] Court finding in the Plaintiff's favor on the sanctions motion." Id. at 466. Accordingly, the court held that the claim for sanctions arose pre-petition. Id.; cf. Boeing N. Am., Inc. v. Ybarra (In re Ybarra), 424 F.3d 1018 (9th Cir. 2005) (claim for attorney fees based upon sanctions arose post-petition where debtor took affirmative post-petition action to litigate a pre-petition claim).

Applying the conduct theory here, the Court looks to the date on which the plaintiffs' sanctionable conduct occurred to determine whether sanctions claims based upon that conduct arose pre-petition or post-petition. Defendant's 1st Motion for Sanctions was based on plaintiffs' failure to provide initial disclosures by the Scheduling Order deadline of April 14, 2025.

Defendant's 2nd Motion for Sanctions was based on plaintiffs' failure to provide preliminary and final witness and exhibits lists, which were due on August 15, 2025 and September 15, 2025, respectively. Defendant's 3rd Motion for Sanctions was based on plaintiffs' failure to make a settlement offer by the Scheduling Order deadline of October 2, 2025. Each of these deadlines, and plaintiffs' failure to abide by them, occurred prior to plaintiff Alhamzawi's Chapter 7 petition date of January 15, 2026. The final instance of sanctionable conduct, however, occurred when plaintiffs failed to appear at the March 16, 2026 hearing, which occurred post-petition. Thus, the attorney's fees awarded on defendant's 1st, 2nd, and 3rd Motions for sanctions, even though the amount of the latter two awards has yet to be fixed, arose pre-petition and have been discharged as to plaintiff Alhamzawi.[6] The attorney's fees awarded as a sanction for plaintiffs' failure to appear the March 16, 2026 hearing, however, were not discharged

[6] The Court does not opine on whether plaintiff Alhamzawi's spouse, plaintiff Alaa Jazayerli, remains liable for defendant's attorney's fees beyond noting that plaintiff Alaa Jazayerli has not participated in this litigation, plaintiffs' filings have borne only plaintiff Alhamzawi's signature, and plaintiff Alhamzawi appears to be prosecuting this case on behalf of both himself and his spouse plaintiff Alaa Jazayerli.

and plaintiffs remain liable for the amount of attorney's fees fixed by the Court for this conduct, as discussed below.[7]

**B. Reconsideration of the Sanctions Order**

Before the fixing the amount of attorney's fees owed to defendant for plaintiffs' sanctionable conduct, plaintiffs ask the Court to reconsider its sanctions order in light of plaintiff Alhamzawi's January 2026 knee injury. Whereas this medical condition does not bear on plaintiffs' conduct that is the subject of defendant's 1st, 2nd, and 3rd Motions for Sanctions, which, as discussed above, took place months before plaintiff Alhamzawi's knee injury and in any case, has been discharged in bankruptcy, it does potentially bear on the remaining sanctionable conduct that is not subject to discharge, namely plaintiffs' failure to appear at the March 16, 2026 hearing.

Following a fall in January 2026, plaintiff Alhamzawi states that on multiple occasions he reported knee pain and had difficulty walking and standing. (Docket No. 105 at p. 2.) He has provided the Court with a report of a physical exam which, while undated, appears to corroborate his claims of knee pain. (Docket No. 105,

[7] Defendant also argues that plaintiff Alhamzawi's bankruptcy case provides an independent reason to deny relief from the judgment dismissing his claims, namely that when plaintiff Alhamzawi filed for bankruptcy his claim against defendant became the property of the bankruptcy estate and therefore only the bankruptcy trustee has standing to prosecute it. (Docket No. 107 at p. 24.) Given that the Court dismissed plaintiffs' claims with prejudice, and here denies post-judgment relief, this argument is moot.

Ex. A at p. 2.) He also states that he received treatment for his knee injury during the month of April 2026. (Docket No. 105 at p. 3). A medication list provided to the Court shows that he was prescribed Methocarbamol, an anti-inflammatory medication, on April 30, 2026. (Docket No. 105, Ex. A at p. 1.) Plaintiff Alhamzawi states that he received additional treatment for his knee injury during the month of May 2026, and subsequently underwent surgery. (Docket No. 105 at p. 3.) He states that he is currently undergoing physical therapy and continues to experience pain and limitations associated with his knee. Id.

While the Court acknowledges that physical injuries and other medical conditions can make in-person attendance at court hearings difficult or impracticable, the circumstances plaintiffs present here do not excuse their failure to attend the March 16, 2026 hearing. Between the alleged date of plaintiff Alhamzawi's knee injury in January 2026 and the March 16 hearing, plaintiffs had at least a month and a half to request accommodations such as a virtual hearing or to postpone the hearing. Instead, plaintiffs did nothing to notify the Court of their circumstances, resulting in the waste of both the Court's and opposing counsel's time. Additionally, plaintiffs previously blamed their failure to appear at the March 16 hearing not on plaintiff Alhamzawi's knee injury but on dubious claims of severe weather. See Docket No. 85. Plaintiffs' shifting excuses for their failure to appear at the

hearing only further persuade this Court that relief from its sanctions order is not warranted.

**C. Attorney's Fees**

Finally, having disposed of all the issues presented by plaintiffs' motion for post-judgment relief, the Court arrives at the final issue for determination: the amount of attorney's fees to be awarded as a sanction for plaintiffs' failure to appear at the March 16, 2026 hearing. Whereas the sanctions for plaintiffs' violation of the Scheduling Order were based upon the authority granted in Fed. R. Civ. P. 16(f), sanctions for plaintiffs' failure to appear at the March 16, 2026 hearing derive from the Court's inherent sanction authority. Farmer v. Banco Popular of N. Am., 791 F.3d 1246, 1258 (10th Cir. 2015) ("[W]hen express laws provided by Congress . . . do not reach the entirety of a litigant's bad-faith conduct, a court may rely instead on its inherent power to impose punitive sanctions.") (citing Chambers v. NASCO, Inc., 501 U.S. 32, 57 (1991)). In exercising this authority, "the amount of fees and costs awarded must be reasonable." Id. at 1259.

"The starting point for a reasonable fee is the 'lodestar' figure, which is 'the number of hours expended on the litigation multiplied by a reasonable hourly rate.' Bowles-Snailer v. Texoma Labs, Inc., No. CIV-22-139-RAW-GLJ, 2023 WL 6129488, at *2 (E.D. Okla. Sept. 19, 2023) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). "A court is to look 'to the prevailing market rates

in the relevant community' in calculating a reasonable fee." Chatman v. Buller, No. 12-CV-182-JHP, 2013 WL 5729603, at *2 (E.D. Okla. Oct. 22, 2013) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). In the Eastern District of Oklahoma, Tulsa is considered "part of the relevant area for purposes of determining a reasonable rate," "given the proximity of the Eastern District's location in Muskogee, Oklahoma, to Tulsa, Oklahoma, along with the fact that a significant portion of the lawyers practicing before this Court are based in Tulsa." Id.

Here, defendant's attorneys are based in Tulsa, Oklahoma and have submitted detailed billing records for the time spent preparing defendant's 2nd and 3rd Motions for Sanctions, as well as time spent attending the March 16, 2026 hearing. Given the Court's determination that the sanctions orders against plaintiffs based upon defendant's 1st, 2nd, and 3rd Motions for Sanctions have been discharged in bankruptcy, the majority of defendant's attorney's billing records are no longer relevant. What remains is the time billed by Attorney Grant A. Fitz for attendance at the March 16, 2026 hearing.

Attorney Fitz's hourly rate is $335, and he has over twenty-three years of experience. (Docket No. 102 at p. 6-7.) Courts in Oklahoma have routinely found similar rates for similarly qualified lawyers to be reasonable. See Bowles-Snailer, 2023 WL 6129488, at *2 ("the Court has no trouble concluding that $400/hour

for Mr. Shook as Lead Counsel,... are reasonable hourly rates"); SFF-TIR, LLC v. Stephenson, 452 F. Supp. 3d 1058, 1196 (N.D. Okla. 2020) (finding reasonable an "effective hourly 'lodestar' rate of $369/hr for all of Defendants' requested fees"); Weiser v. Pathway Servs. Inc., No. 17-CV-673-GKF-FHM, 2019 WL 6723563 at *2 (N.D. Okla. Aug. 26, 2019) (finding $350/hour a reasonable rate for attorney with nineteen years' experience). Accordingly, the Court finds that Attorney Grant A. Fitz's rate of $335/hour is reasonable.

As to the number of hours billed attending the March 16, 2026 hearing, the attached billing records show that 2.4 hours were billed for "travel time" to and from the courthouse and .3 hours were billed for attending the hearing itself. (Docket 102, Ex. 1 at p. 4.) "It is unreasonable to bill a client for time spent travelling at the same rate for time actually working. '[A]n attorney's [travel] time, while necessary, is essentially unproductive and, therefore, compensable at a reduced hourly rate.'" Catholic Benefits Ass'n LCA v. Azar, No. CIV-14-240-R, 2018 WL 3876615, at *8 (W.D. Okla. Aug. 15, 2018) (quoting Smith v. Freeman, 921 F.2d 1120, 1122 (10th Cir. 1990)). The Court finds that a rate of $167.50, half of Attorney Grant A. Fitz's normal rate of $335/hour, is a reasonable fee for travel time. Multiplied by the 2.4 hours spent traveling to and from the courthouse, that yields a fee of $402.00. The .3 hours spent attending the hearing,

billed at $335/hour, yields a fee of $100.05. Defendant's total reasonable attorney's fees for attendance at the March 16, 2026 hearing then are $502.05.

## IV. Conclusion

Plaintiffs' motion, insofar as it seeks to alter or amend the judgment pursuant to Rule 59(e), or in the alternative, for relief from judgment pursuant to Rule 60(b) is **DENIED.** Plaintiffs' motion, insofar as it seeks reconsideration of Court's sanctions order, (Docket No. 100,) is **GRANTED IN PART AND DENIED IN PART.** Defendant's motion for attorney's fees is **GRANTED IN PART AND DENIED IN PART.**

The Court's prior order on defendant's 1st Motion for Sanctions, (Docket No. 48,) in which it ordered plaintiffs to pay $2,316.50 in defendant's attorney's fees, is **VACATED.** The Court's prior order on defendant's 2nd and 3rd Motion for Sanctions, (Docket No. 100,) insofar as it imposed sanctions for plaintiffs' failures to comply with the Scheduling Order, is **VACATED.**

Plaintiffs are ordered to pay defendant $502.05 in attorney's fees as a sanction for their failure to appear at the March 16, 2026 hearing.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 29, 2026.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE